UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOAH THOMPSON,<br><br>                               Plaintiff,<br><br>          -against-<br><br>CHURCHILL CAPITAL CORP II,<br>MICHAEL KLEIN, JEREMY PAUL ABSON,<br>GLENN AUGUST, DENA J. BRUMPTON,<br>MARK KLEIN, MALCOLM S. MCDERMID,<br>and KAREN G. MILLS,<br><br>                          Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Noah Thompson ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Churchill Capital Corp II ("Churchill II" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Churchill II, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between Churchill II and Software Luxembourg Holding S.A. ("Skillsoft") and Albert DE Holdings Inc. ("Global Knowledge"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.      On October 12, 2020, Churchill II entered into an Agreement and Plan of Merger

(the "Merger Agreement"), pursuant to which Churchill II will acquire Skillsoft for $1.3 Billion in a combination of stock and cash consideration. (the "Merger Consideration"). Churchill II will also acquire Global Knowledge for $233 Million in a combination of stock and cash consideration. The Combined Company will continue to operate as Skillsoft and trade on the NYSE under the ticker symbol "SKIL." After the closing of the Proposed Merger, Churchill II's public common stockholders will only retain an ownership interest between 42%-54% in the post-combination company.

3.       On January 25, 2021, in order to convince Churchill II shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement/prospectus on Form S-4 (the "Proxy") with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure.

4.       In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Skillsoft, Global Knowledge, and the post-closing combined company and valuation information related to the Proposed Merger; (ii) the financial advisors employed by the Company including, The Klein Group, LLC ("KG"), a wholly owned subsidiary of M. Klein and Company, Citigroup, Inc. ("Citi"), and Tyton Partners Capital Markets, LLC ("Tyton") (collectively, the "Financial Advisors"); (iii) the process and background of the Proposed Merger; and (iv) the Global Knowledge Merger.

5.       The special meeting of Churchill II shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of disclosure.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Churchill II's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of disclosure.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

10.     Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because the Company's principal executive office is located in this District at 640 Fifth Avenue, 12th Floor, New York, NY 10019 and Defendants are found or are inhabitants or transact business in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of Churchill II common stock.

12.      Defendant Churchill II is a blank check company formed in order to effect a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or other similar business combination with one or more businesses or entities. The Company's principal executive office is located at 640 Fifth Avenue, 12th Floor, New York, NY 10019. Churchill II is incorporated under the laws of Delaware and its common stock trades on the NYSE exchange under the ticker symbol "CCX".

13.     Individual Defendant Michael Klein is the Company's founder has been the Chief Executive Officer ("CEO") of the Company and Chairman of the Board at all relevant times. He is also the founder and managing partner of M. Klein and Company.

14.     Individual Defendant Jeremy Paul Abson has served as director of the Company at all relevant times.

15.     Individual Defendant Glenn August has served as director of the Company at all relevant times.

16.     Individual Defendant Dena J. Brumpton has served as director of the Company at all relevant times. He is also a Managing Director at M. Klein and Company.

17.     Individual Defendant Mark Klein has served as director of the Company at all

relevant times. He is also a Managing Member and Majority Partner of M. Klein & Company.

18.     Individual Defendant Malcolm S. McDermid has served as director of the Company at all relevant times.

19.     Individual Defendant Karen G. Mills has served as director of the Company at all relevant times.

20.     The Individual Defendants referred to in ¶¶ 13-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Churchill II they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.      Background and the Proposed Merger

21.     Churchill II is a blank check company formed as a corporation in Delaware on April 11, 2019 for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses.

22.      Skillsoft provides online learning, training, and talent solutions. Skillsoft enables organizations to build teams with the skills they need for success. Empowering 36 million learners and counting, Skillsoft democratizes learning through an intelligent learning experience and a customized, learner-centric approach to skills development with resources for Leadership Development, Business Skills, Technology & Development, Digital Transformation, and Compliance.

23.     Global Knowledge is the world's leading technology skills training provider, supporting major enterprises and tech professionals with innovative and flexible learning solutions, Anytime, Anyplace, and Anyhow. Global Knowledge equips individuals and organizations for success with the broadest and deepest portfolio of IT training solutions available

and consistently providing the most relevant content and best customer experience possible. Established in 1995, Global Knowledge delivers over one million separate courses every year, to over 200,000 technology professionals.

24.     On October 13, 2020, Churchill II, Skillsoft, and Global Knowledge issued a press release announcing the Proposed Merger, which states in relevant part:

### Churchill Capital Corp II Announces Agreement to Acquire Skillsoft and Global Knowledge to Create the Leading Corporate Digital Learning Company

- *Churchill II to Merge with Skillsoft, the Pioneer of Digital Learning, in a $1.3 Billion Transaction and Will Also Acquire Global Knowledge, the Global Leader in IT and Business Skills Training, for $233 Million*
- *Total Combined Transaction Valuation of $1.5 Billion*
- *Valuation at 2x Revenues and 8x Adjusted EBITDA Represents a Significant Discount to Markets*
- *Significant Cash Infusion From Churchill to Transform Skillsoft and Support the Combined Company's Growth and Consolidation Strategy*
- *Initial $100 Million Equity Investment From Prosus, One of the Leading Technology Investors in the World, to Fuel Future Growth*
- *Jeffrey Tarr, Former CEO of DigitalGlobe and President & COO of IHS, to Serve as Company's Chief Executive Officer*

NEW YORK, BOSTON, and CARY, NC – October 13, 2020 – Churchill Capital Corp II ("Churchill II") (NYSE: CCX.U), a special purpose acquisition company, and Software Luxembourg Holding S.A. ("Skillsoft"), a global leader in digital learning and talent management solutions, announced today that they have entered into a definitive agreement to merge, and Churchill II also announced today that it has entered into a definitive agreement to acquire Global Knowledge Training LLC ("Global Knowledge"), a worldwide leader in IT and professional skills development, from investment funds affiliated with Rhône Capital, a global private equity firm. Churchill II will merge with Skillsoft in a transaction valued at approximately $1.3 billion and, following the closing of the merger, the combined company will acquire Global Knowledge for approximately $233 million, putting the total cost of the transactions at $1.5 billion.

The combined company will operate as Skillsoft and will be listed on the New York Stock Exchange (the "NYSE"). The combination of Skillsoft and Global Knowledge will create the world's leading digital learning company with a comprehensive suite of content; customized learning journeys; accessible modalities, and an expanded course portfolio of next-generation, on-demand and virtual content for enterprise learning.

At a time when digital learning has never been more relevant in driving the success of organizations, Global Knowledge adds scale to Skillsoft's immersive and engaging, learner-centric platform with its extensive IT course portfolio and global consumer reach. Together with Global Knowledge, Skillsoft will be even better positioned to support its customers around the world as they adapt at an unprecedented pace in response to the global pandemic, growing skills gap and evolving workplace needs. The combined company intends to significantly increase its scale through organic growth and acquisitions and extend its leadership position as the industry's largest and most profitable digital learning company.

The combined company's client base will include more than 70% of Fortune 1000 companies and more than 45 million users across content platforms. As a trusted partner in the corporate learning ecosystem, Skillsoft will leverage its award-winning Skillsoft Percipio cloud-based platform to deliver personalized, high-quality learning experiences that enable enterprises to build a future-fit, resilient workforce and to educate, upskill and retain their employees in a rapidly changing economy.

With a seasoned leadership team supported by a harmonized sales and marketing effort, the merger will deliver significant improvements in efficiency and productivity. As the largest digital learning company for enterprises, Skillsoft will be uniquely positioned to capture an underserved and fragmented market through a revitalized go-to-market strategy, new product offerings, and accretive M&A. Following closing of the transactions, management will seek to integrate Skillsoft and Global Knowledge and drive significant expected synergies.

Churchill II intends to work with the Company to offer critical training resources to the more than 30 million people unemployed due to the COVID-19 pandemic on a free or administrative cost basis.

"This transaction is an excellent fit with Churchill II's mission and focus, as both Skillsoft and Global Knowledge are dedicated to training and reskilling workers for jobs of the future while providing exceptional shareholder returns in a high-growth market with favorable demographic trends," said Michael S. Klein, Chairman and CEO of Churchill II. "The combination will create the leading digital learning platform in the industry, and the new Skillsoft will be on track to become one of the fastest growing companies in the digital learning space."

Jeffrey Tarr has agreed to be the Chief Executive Officer of the combined company, with a mission to drive top-line growth, achieve operational excellence and lead consolidation in the digital learning sector. Mr. Tarr has a successful track record of building tech-enabled services companies into trusted industry leaders. He previously served as CEO of DigitalGlobe and President & Chief Operating Officer of IHS. At both companies he drove strong double-digit revenue and EBITDA growth by inspiring team members to better serve customers, improve operating

performance, capitalize on new technologies and unlock new markets.

"By bringing together Skillsoft and Global Knowledge, we are creating a new leader in the vast and rapidly growing global digital learning market," said Mr. Tarr. "With an unrivaled library of content, best-in-class platform, multi-modal capabilities, global footprint, world-class customer base and strong balance sheet, we are well-positioned to drive growth, profitability and shareholder value."

Ron Hovsepian, Executive Chairman of Skillsoft, said, "We look forward to joining forces with Churchill II and Global Knowledge at a time when companies around the world are accelerating their digital transformations and the digital learning industry is experiencing tremendous growth. As we continue helping our customers build a future-fit, resilient workforce, Global Knowledge will extend our leadership in the growing IT training market."

Todd Johnstone, CEO of Global Knowledge, said, "We are excited about the increased opportunities that will now open up for us to innovate further in a growing global market and to work with our customers and partners to close critical skills gaps. The combination of Global Knowledge and Skillsoft gives customers the reassurance that they will consistently receive the best possible learning experience and the most relevant content available anytime, anyplace, and anyhow they require."

Churchill Capital Corp II is a NYSE-listed special purpose acquisition company and is one of the public company vehicles in the Churchill Capital group of companies ("Churchill"). Churchill's strategy is to identify and complete initial business combinations with unique, leading companies in growing industries that complement the experience and expertise of Churchill's management team, Board of Directors and Operating Partners. Churchill's team draws from leaders of Fortune 500 Companies who invest directly in Churchill, execute value enhancement strategies and operate Churchill's businesses in the public market.

Prosus N.V. ("Prosus") (AEX and JSE: PRX), a global consumer internet group and one of the largest technology investors in the world, is contributing equity capital to Churchill to further Skillsoft's organic and strategic initiatives.

Summary of Transaction

Churchill II will contribute up to $697 million of cash raised during its initial public offering in June 2019. In addition, Churchill II expects more than $170 million in common equity through private investment in public equity ("PIPE") commitments, including from Prosus, which has committed to invest $100 million into Churchill II in connection with the transactions, with the option to expand further.

Churchill II has agreed to acquire Global Knowledge from investment funds

affiliated with Rhône Capital for consideration of up to 6 million warrants at an exercise price of $11.50 per share in the combined company, subject to terms of the agreement. These investment funds have also agreed to invest $50 million in additional Class A common stock at $10.00 per share, subject to certain conditions and the terms of the related subscription agreement. Additionally, Lodbrok Capital LLP has committed $20 million in connection with the Global Knowledge transaction.

Upon the close of the transaction, Churchill II's shareholders are expected to own approximately 65% of the combined company. Skillsoft shareholders and PIPE investors will own approximately 22% and 13%, respectively.

The combined company's capital structure will consist of approximately $463 million of net debt, or 2.3x adjusted EBITDA.

The Boards of Directors of Churchill II, Skillsoft and Global Knowledge have unanimously approved the respective proposed transactions.

The transactions are each expected to close in January 2021, subject to approval by Churchill II and Skillsoft shareholders and receipt of regulatory approvals and customary closing conditions.

Advisors

Citigroup and Tyton Partners served as financial advisors and Paul, Weiss, Rifkind, Wharton & Garrison LLP served as legal counsel to Churchill. Citigroup acted as Sole Bookrunner for Churchill Capital II's initial public offering.

Weil, Gotshal & Manges LLP served as legal counsel to Skillsoft and Houlihan Lokey Capital, Inc. served as financial advisor.

Lazard and Three Keys served as financial advisors, and Sullivan & Cromwell LLP served as legal counsel to Global Knowledge.

## II.    The Proxy Omits Material Information

25.     On January 25, 2021, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an

informed decision in connection with the Proposed Merger.

        A.    <u>The Misleadingly Incomplete Financial Projections and Valuation Information</u>

26.    First, the Proxy states that Churchill management reviewed with the Churchill Board prospective financial information that reflected Churchill management's strategy for New Skillsoft and, Churchill management, with assistance of Citi and Churchill's other financial advisors and consultants, reviewed certain additional financial information relating to the Merger and the Global Knowledge Merger, including perspectives on Skillsoft's and New Skillsoft's valuations as implied by the terms of the Merger and the Global Knowledge Merger. However, the Proxy fails to provide the results of this analysis or any summary thereof. Given the importance of valuation to a shareholder's decision in a Proposed Merger, shareholders are entitled to a fair summary of the analyses performed, especially when those analyses were relied upon by the Board to approve the Proposed Merger as being in the best interests of its shareholders. The failure to disclose the valuation analyses renders the related statements misleading and is in direct violation of federal securities regulations. 17 CFR § 229.1015; 17 CFR § 240.14a-101.

27.    Second, the Proxy omits critical financial projections for Skillsoft, Global Knowledge and the post-closing combined company, including net income projections for both entities for all years, levered free cash flow projections for both entities for 2021, the standalone projections for Global Knowledge, the projections actually prepared by Skillsoft, and the projections actually prepared by Global Knowledge (the "Omitted Projections").

28.    Defendants elected to summarize Skillsoft's and Global Knowledge's financial projections, but they excised and failed to disclose the Omitted Projections. By disclosing certain projections in the Proxy and withholding the Omitted Projections, Defendants render the table of projections on page 216 of the Proxy materially incomplete and provide a misleading valuation

picture of Skillsoft, Global Knowledge, and the post-closing combined company.

29.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such disclosures must be complete and accurate. Accordingly, Defendants have disclosed some of the projections provided to and relied upon by the Board but failed to disclose the Omitted Projections and valuation information. This omission renders the summary of the projections, the financial picture of Skillsoft, Global Knowledge, and the post-closing combined company, and the valuation implied by the Merger Consideration provided in the Proxy misleadingly incomplete.

B.      The Misleadingly Incomplete Information Regarding the Financial Advisors

30.     The Proxy states that in evaluating financial aspects of the Proposed Merger, the Churchill Board relied on Churchill's financial advisors, including Citi, Tyton and the Klein Group. However, the Proxy fails to state: (i) the compensation each financial advisor received for acting as a financial advisor; (ii) the historical relationships between each financial advisor on the one hand, and the Company, the Individual Defendants, Skillsoft, Global Knowledge, or any affiliates thereof (including, but not limited to, Luxembourg Holding S.A., Albert DE Holdings Inc., Rhône Capital, Lodbrok Capital LLP) on the other.

31.     Disclosure of any compensation received or to be received as a result of the relationship between a financial advisor and the company it advises, or its related affiliates, is required pursuant to Item 1015. Moreover, it is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when

assessing how much credence to give its work or how much scrutiny to give the Proposed Merger. A reasonable shareholder would want to know what important economic motivations that the advisor might have.

C.   The Misleadingly Incomplete Background of the Merger

32.   The Proxy contains a misleadingly incomplete summary of the events leading up to the Merger, which omits material facts. Once a company travels down the road of partial disclosure of the history leading up to a merger, they had an obligation to provide shareholders with an accurate, full, and fair characterization of those historic events. Even a non-material fact can trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.

33.   First, the Proxy states that substantial discussions and negotiation of transaction documents with an alternate acquisition target and exploration but fails to disclose the pertinent details concerning any of these discussions, including: (i) offers or valuations made; (ii) whether confidential information was exchanged; (iii) whether NDAs were executed; and (iv) and the terms of any NDAs including standstill and or DADW provisions. Such information is directly related to the decision to approve the Proposed Merger or seek a better deal. Thus, the omission of this information renders the summary of the process misleadingly incomplete.

34.   Second, the Proxy discusses the composition of the combined company Board throughout the document and lists it as a "material" factor in recommending that shareholders vote in favor of the Proposed Merger. Yet, the Proxy fails to disclose the timing and nature of the negotiations leading to the determination of the board seats for the combined company. Such information is important to shareholders because negotiating for Board seats is a conflict of interest that could cause directors to value their own continued involvement in the Company over

the value offered to shareholders.

35.    Accordingly, the omission and/or partial disclosure of this information renders the summary provided in the Proxy misleadingly incomplete.

D.    The Misleadingly Incomplete Information About the Global Knowledge Merger

36.    The Proxy states that shareholders are being asked to, *inter alia*: (i) vote upon a proposal to approve the Skillsoft Merger Agreement; (ii) vote upon a proposal to approve the issuance of shares of Churchill II common stock pursuant to the Skillsoft Merger Agreement; . . . (vii) vote upon a proposal to approve the issuance of shares of Churchill II common stock pursuant to the Prosus Subscription Agreement; and (viii) vote upon a proposal to approve the issuance of shares of Churchill II common stock pursuant to the SuRo Subscription Agreement.

37.    However, the Proxy fails to state why Churchill shareholders will not have an opportunity to: (i) vote upon a proposal to approve the Global Knowledge Merger Agreement; (iii) vote upon a proposal to approve the issuance of Churchill II common stock and warrants to purchase Churchill II common stock pursuant to the Global Knowledge Merger Agreement; or (iii) vote upon a proposal to approve the issuance of shares of Churchill II common stock pursuant to the Lodbrok PIPE Investment.

38.    The Global Knowledge Merger was agreed to on October 12, 2020, the same day as the Skillsoft Merger Agreement. To execute the Global Knowledge Merger, and Lodbrok PIPE Investment made in connection with the execution of the Global Knowledge Merger Agreement, Churchill Capital II will issue 7,000,000 shares and warrants of Churchill II common stock. By comparison, the SuRo Subscription Agreement—which Churchill shareholders will vote on—only authorizes the issuance of 1,000,000 shares. Accordingly, Defendants must either allow Churchill shareholders to vote on the Global Knowledge Merger and Lodbrok PIPE Investment, or else,

explain why shareholders are not entitled to vote on these transactions.

39.    Moreover, in summarizing the post-transaction holding percentages for the parties involved in the transactions surrounding the Proposed Merger, on pages 22-23, the Proxy states that such totals do not account for the Global Knowledge Merger. Given the sizable dilution occurring with the Global Knowledge Merger, this information must be disclosed to prevent a misleadingly incomplete summary.

40.    In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure.  Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

41.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

44.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.  Item 1015 and Item 14(b)(6) require the disclosure of the omitted Financial Advisors' valuation information, potential conflicts of interest, and compensation.  17 CFR § 229.1015; 17 CFR § 240.14a-101.  Therefore, the omission of this information violates Section 14(a).

45.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections and valuation information; (ii) the financial advisors; (iii) the background of the Proposed Merger; and (iv) the Global Knowledge Merger.

46.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

47.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided them.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

49.     Churchill II is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

50.     The misrepresentations and omissions in the Proxy are material and Plaintiff will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Churchill II's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Churchill II within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

55.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

60.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

61.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

62.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

63.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Churchill II shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 18, 2021

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*